## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF MASSACHUSETTS

## EASTERN DIVISION

| | |
|---|---|
| **In re**<br><br>**JOSEPH P. RUTHAFORD,**<br><br>_____ **Debtor** | **Chapter 7**<br>**Case No. 11-15677-FJB** |
| **DONALD LASSMAN, as he is CHAPTER 7 TRUSTEE,**<br><br>**Plaintiff**<br><br>**v.**<br><br>**CHRISTOPHER SANTOSUOSSO, CAMERON & MITTLEMAN LLP, and JOHN R. BERNARDO, III,**<br><br>**Defendants** | **Adversary Proceeding**<br>**No. 11-1340-FJB** |

**MEMORANDUM OF DECISION AND ORDER ON**
**(1) MOTION FOR SUMMARY JUDGMENT OF CAMERON & MITTLEMAN LLP,**
**(2) MOTION FOR SUMMARY JUDGMENT OF JOHN R. BERNARDO, III,**
**(3) CROSS MOTIONS OF PLAINTIFF FOR SUMMARY JUDGMENT,**
**(4) ORDER TO SHOW CAUSE, AND**
**(5) PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT AS TO CHRISTOPHER SANTOSUOSSO**

I.      **Overview**

By his complaint in the adversary proceeding, Donald Lassman ("Trustee"), plaintiff and chapter

7 trustee in the bankruptcy case of debtor Joseph P. Ruthaford ("Ruthaford"), seeks relief for certain

alleged pre-petition fraudulent transfers pursuant to 11 U.S.C. § 544(b) and the Rhode Island Uniform

Fraudulent Transfer Act ("RIUFTA"), R.I. Gen. Laws 1956, §§ 6-16-4 and 6-16-5.  Pursuant to 11 U.S.C. §

550(a), the Trustee seeks to recover from Christopher Santosuosso ("Santosuosso") as the initial

transferee of the alleged fraudulent transfers, as well as from Defendants John R. Bernardo, III

("Bernardo") and Cameron & Mittleman, LLP ("C&M") as immediate or mediate transferees.  Before the

Court are motions by defendants Bernardo and C&M for summary judgment, cross motions by the Trustee for summary judgment against Bernardo and C&M, an order requiring the Trustee to show cause why the counts against Bernardo and C&M should not be dismissed, and a motion by the Trustee for default judgment against Santosuosso.

## II.    Procedural History

On June 14, 2011, Ruthaford filed a petition for relief under chapter 7 of the Bankruptcy Code, commencing the present bankruptcy case.  Donald Lassman was appointed chapter 7 trustee and, in that capacity, timely filed the complaint commencing this adversary proceeding.  It asserts five counts. In Count I, the Trustee, invoking the avoidance power afforded him by 11 U.S.C. § 544(b)(1), seeks to avoid two transfers of real estate from Ruthaford to Santosuosso under RIUFTA § 6-16-4; in Count II, he seeks in the alternative to avoid the same two transfers under RIUFTA § 6-16-5.  By Count III, the Trustee seeks under 11 U.S.C. § 550(a)(1) to recover the value of the transfers avoided under Counts I and II from Santosuosso as the initial transferee.  By Counts IV and V, he seeks under 11 U.S.C. § 550(a)(2) to recover the value of the transfers avoided under Counts I and II from C&M and Bernardo, respectively, as immediate or mediate transferees.

Bernardo and C&M have answered the complaint but Santosuosso has not.  The Court entered Santosuosso's default, and now the Trustee has moved for entry of judgment by default against him. Santosuosso has not responded to the motion.

Bernardo and C&M have moved for summary judgment and for entry of separate and final judgment as to them pursuant to Rule 54(b).  In support of their respective motions for summary judgment, each has also submitted a statement of undisputed facts.  As to each motion for summary judgment, the Trustee has submitted an opposition, a cross motion for summary judgment, and a statement of undisputed facts supporting each of his oppositions and cross motions.

By order entered after briefing was completed on the motions and cross-motions for summary judgment (the "Order to Show Cause"), the Court ordered the Trustee to show cause why summary judgment should not enter for Bernardo and C&M on the basis that it appears to be undisputed that these defendants are not transferees of the real property that is the subject of this adversary proceeding. The Trustee has filed a response to the Order to Show Cause.

The Court held a hearing on the motions and cross-motions for summary judgment, on the Order to Show Cause, and on the Motion for Default Judgment. At the close of the hearing, the Court took the various matters under advisement but indicated also that the Motion for Default Judgment would be addressed only at the close of the adversary proceeding as against the remaining defendants.

## III.   Facts

Except as otherwise indicated, the following facts are established and uncontroverted.

1.      At all relevant times, Bernardo has been an attorney admitted to practice law in Rhode Island. His law practice includes the closing of real estate transactions. In June 2009, at the request of a Rhode Island real estate broker, Bernardo agreed to represent Ruthaford in the closing of a purchase of residential property located at 36 Canton Street in Providence, Rhode Island (the "Providence Property"). The seller, Aurora Loan Services, LLC ("Aurora"), was represented by separate counsel. The closing was scheduled for June 22, 2009 at Bernardo's office in Providence ("First Scheduled Closing").

2.      Prior to the First Scheduled Closing, Bernardo had never met, dealt with, or spoken to Ruthaford, and he had no knowledge concerning Ruthaford's financial condition.

3.      In anticipation of the First Scheduled Closing, Bernardo prepared a HUD-1 settlement statement listing Aurora as the seller and Ruthaford as the sole buyer. Additionally, Bernardo prepared a quitclaim deed transferring the Providence Property from Aurora to Ruthaford. Aurora executed the deed on June 12, 2009.

4.      On June 22, 2009, Ruthaford arrived at the First Scheduled Closing with Defendant Santosuosso.  Prior to this date, Bernardo had never met, dealt with, or spoken to Santosuosso. Ruthaford and Santosuosso informed Bernardo that they intended to purchase the property jointly. However, they also informed Bernardo that they had not brought with them the consideration required to close the transaction, which was approximately $45,000.  Accordingly, no closing occurred on June 22, 2009.

5.      At some point after the First Scheduled Closing, Ruthaford and Santosuosso informed Bernardo that they had arranged to provide the necessary funds to purchase the Providence Property together.  Under the new funding arrangement, Santosuosso would provide $21,609.12 and a lender, Casa Del Denaro Realty, LLC ("Casa Del Denaro"), would furnish the balance of the funds.

6.      Bernardo scheduled a second closing for June 26, 2009 ("Second Scheduled Closing"). Ruthaford and Santosuosso instructed Bernardo that the Providence Property was to be transferred from Aurora to Ruthaford *and* Santosuosso (not to Ruthaford as sole owner).  Bernardo did not prepare an additional HUD-1 settlement statement in anticipation of the Second Scheduled Closing.  Nor did Bernardo obtain a new deed from Aurora.  Instead, in an attempt "to obviate the delay and necessity of redrafting and obtaining new approvals," Bernardo structured the Second Scheduled Closing "so that the subject property would be simultaneously transferred from Aurora to Ruthaford and from Ruthaford to himself and Santosuosso."  Thus, rather than asking Aurora to execute a new deed that transferred the property from Aurora to Ruthaford and Santosuosso together, Bernardo structured the transaction in two steps by using the existing Aurora-to-Ruthaford deed and then having Ruthaford execute an additional deed at the Second Scheduled Closing that would immediately transfer the property from himself alone to himself and Santosuosso together.

7.      At the Second Scheduled Closing, on June 26, 2009, Santosuosso tendered a personal check ("Santosuosso Check") for $21,609.12, drawn on a Wachovia Bank account, as consideration for

the Providence Property.  Ruthaford and Santosuosso also tendered a check supplied by Casa Del

Denaro for the balance of the purchase price ("Casa Del Denaro Check").[1]

8.      Also at the Second Scheduled Closing, Ruthaford executed a deed transferring the

Providence Property from Ruthaford alone to Ruthaford and Santosuosso together, thus effecting the

"First Ruthaford-to-Santosuosso Transfer."

9.      Also at the Second Scheduled Closing, Ruthaford and Santosuosso executed a

promissory note[2] and a mortgage deed in favor of Casa Del Denaro.

10.      After the closing, Bernardo deposited the Santosuosso Check and the Casa Del Denaro

Check into his client account.  On June 27, 2009, the day after the closing, Bernardo checked the status

of his online client account, which listed the Santosuosso Check as "Cleared."  Bernardo subsequently

disbursed the total due from his client account to the seller, Aurora.  On January 29, 2009, Bernardo

recorded the Aurora-to-Ruthaford deed, the Ruthaford-to-Ruthaford-and-Santosuosso deed, and the

Casa Del Denaro mortgage deed.

11.      The Santosuosso Check was not honored by the drawee, Wachovia Bank, because the

account had been closed prior to final clearance of the check.  Bernardo learned this only after he had

already disbursed the total purchase price to Aurora from his client account and only after he had

already recorded the above mentioned deeds.

12.      On or around August 7, 2009, Bernardo commenced a civil action against Ruthaford and

Santosuosso in Providence Superior Court to recover the $21,609.12 represented by the dishonored

Santosuosso Check.  In addition to other relief, Bernardo sought the imposition of a constructive trust

on the Providence Property.  Bernardo was represented in the civil action by defendant C&M, a Rhode

---

[1] The amount of the Casa Del Denaro Check appears to be in dispute with the Trustee asserting $23,215 and
Defendants Bernardo and C&M asserting $25,000.

[2] Bernardo notes in his Statement of Undisputed Facts that "there has been no indication in discovery that Mr.
Ruthaford was asked by Casa Del Denaro to execute a promissory note in connection with the transaction."  Be
that as it may, it is not genuinely disputed that Ruthaford *did* execute the promissory note.

Island law firm.  In connection with the civil action, C&M, on Bernardo's behalf, recorded a lis pendens against the Providence Property.

13.     In response to Bernardo's efforts to recover the $21,609.12, Santosuosso attempted to find a buyer for the Providence Property so that he could pay back Bernardo from the sale proceeds.

14.     On or around April 21, 2010, Santosuosso obtained a quitclaim deed from Ruthaford that transferred Ruthaford's remaining half interest in the Providence Property to Santosuosso, the "Second Ruthaford-to-Santosuosso Transfer."  The deed indicates that the consideration paid by Santosuosso in exchange for Ruthaford's interest was $1.00.  In fact, Ruthaford received no compensation in exchange for the transfer of his interest.  He executed the deed with the knowledge that Santosuosso was in the process of attempting to sell the Providence Property.[3]

15.     Ruthaford testified at a deposition that he did not "transfer the property to Mr. Santosuosso at any point in an attempt to shield money or property or hide assets from creditors."

16.     At some point in or around April 2010, Santosuosso informed Attorney Bernardo that he was now in a position to complete a purchase and sale of the entire Providence Property as he had obtained a quitclaim deed from Ruthaford.

17.     On or about April 30, 2010, Santosuosso conveyed the Providence Property to one Anne Holzinger by warranty deed for the sum of $85,000.  The sale to Holzinger was structured so that $25,339.54 of the $85,000 purchase price was paid directly to C&M.  C&M then remitted $21,609.02 to Bernardo and retained $3,730.52 for legal fees and expenses.  In exchange for receiving a portion of the proceeds of the sale to Holzinger, Bernardo voluntarily dismissed his civil action with prejudice and released the lis pendens against the Providence Property.  Also, as the HUD Settlement Statement from

---

[3] Ruthaford's deposition testimony is as follows:

Q.     And was it your understanding at that time that Mr. Santousuosso, who I referred to as Chris, was trying to sell the property?

A.     He was in the works of trying to sell it.  I don't know if he had obtained a buyer or anything of that nature.

Q.     Okay.  And did you ask Mr. Santosuosso for any money in exchange for signing [the deed]?

A.     No.

the closing further shows, the Providence Property was encumbered at the time of the closing by a

mortgage in favor of Casa del Denaro in the amount of $30,970.80, and this encumbrance, too, was paid

and satisfied from the purchase price.  As an obligor on the loan from Casa del Denaro, Ruthaford was

personally liable for this sum, and the payment from the sale proceeds satisfied this liability. The HUD

Settlement Statement also appears to indicate that the proceeds of the sale to Holzinger were used in

part to pay municipal assessments against the property for taxes, water, and sewer totaling $7,521.90.

      18.      On May 3, 2010, the April 21, 2010 quitclaim deed from Ruthaford to Santosuosso and

the April 30, 2010 warranty deed from Santosuosso to Holzinger were both recorded.

      19.      In or around 2010, FIA Card Services sued Ruthaford twice: case number 10-4773 in

Kent County (Rhode Island) Superior Court, which resulted in a default judgment; and case number 10-

4773 in Kent County District Court, which resulted in judgment and execution.

      20.      On June 14, 2011, Ruthaford filed a petition for relief under chapter 7 of the Bankruptcy

Code.  Ruthaford's bankruptcy schedules list an undisputed debt to FIA Card Services for $19,027.64, an

undisputed debt to AIG Federal Savings Bank for $4,650 that dates back to an account opened in 2004,

and student loan debts of $14,600.

      21.      In the Statement of Financial Affairs that he filed in his bankruptcy case, Ruthaford

stated that in 2010 he earned $11,000.

## IV.    Jurisdiction

      Counts I and II of the Trustee's complaint seek avoidance of fraudulent transfers pursuant to the

Trustee's authority under 11 U.S.C. § 544(b)(1).  These counts arise under the Bankruptcy Code and in a

bankruptcy case and therefore fall within the jurisdiction given the district court in 28 U.S.C. § 1334(b)

and, by standing order of reference, referred to the bankruptcy court pursuant to 28 U.S.C. § 157(a).

      Counts III, IV, and V seek recovery under 11 U.S.C. § 550(a) of the value of the property that is

the subject of Count I and II, the fraudulent transfer counts.  Rights to recover under §550(a) are

derivate of rights to recover under fraudulent transfer counts and wholly remedial, and therefore should

be construed as simply part of the fraudulent transfer counts. *In re Miller*, 467 B.R. 677, 681 (Bankr. D.

Mass. 2012). Accordingly, Counts III, IV, and V require no separate determination of their jurisdiction.


V.      **Authority to Enter a Final Judgment**

A proceeding to determine, avoid, or recover a fraudulent transfer is by statutory designation a

core proceeding. 28 U.S.C. § 157(b)(2)(H). Section 157 authorizes bankruptcy courts to enter final

orders and judgments in core proceedings, subject to appellate review by the district court. 28 U.S.C. §

157(b)(1). However, the Supreme Court in *Stern v. Marshall* held that even though Congress has

statutorily authorized bankruptcy courts to enter final judgment on certain claims, bankruptcy courts

may not have the constitutional authority to do so. *Stern v. Marshall*, 131 S. Ct. 2594, 2620, 180 L. Ed.

2d 475 (2011) ("The Bankruptcy Court below lacked the constitutional authority to enter a final

judgment on a state law counterclaim that is not resolved in the process of ruling on a creditor's proof of

claim"). For lack of Article III status, a bankruptcy judge cannot enter a final order or judgment if doing

so would require exercise of the judicial power of the United States and no public rights exception

applies. *Id*. at 2611, 2620. Thus, Article III of the Constitution prohibits a bankruptcy court from finally

adjudicating certain claims if doing so would require an exercise of the judicial power of the United

States, *even* if the claim is of a type designated by 28 U.S.C. 157(b) as a core proceeding.

While "Stern made clear that some claims labeled by Congress as 'core' may not be adjudicated

by a bankruptcy court in the manner designated by § 157(b), [. . .] Stern did not [. . .] address how the

bankruptcy court should handle such claims." *Executive Benefits Ins. Agency v. Arkison*, 134 S. Ct. 2165,

2173, 189 L. Ed. 2d 83 (2014). With respect to a proceeding that is not a core proceeding and as to

which the parties have not consented to entry of final judgment by the bankruptcy judge, § 157(c)(1)

permits a bankruptcy judge to hear the proceeding and submit proposed findings of fact and conclusions

of law to the district court, with any final order or judgment to be entered by the district court. 28

U.S.C. § 157(c)(1).  Section 157 provides no such option for matters that are statutorily core but that the

bankruptcy court lacks constitutional authority to adjudicate.  In the wake of *Stern*, bankruptcy courts

began applying this non-core procedure to *Stern*-type claims.  *See In re Miller*, 467 B.R. 677, 683-84

(Bankr. D. Mass. 2012) (*collecting cases*).  Additionally, the district court enacted Rule 206 of the Local

Rules of the United States District Court for the District of Massachusetts, which provides that:

> If a bankruptcy judge determines that entry of a final order or judgment
> by a bankruptcy judge would not be consistent with Article III of the
> United States Constitution in a particular proceeding referred under L.R.
> 201 and determined to be a core matter under 28 U.S.C. § 157, the
> bankruptcy judge shall hear the proceeding and submit proposed
> findings of fact and conclusions of law to the district court made in
> compliance with Fed.R.Civ.P. 52(a)(1) in the form of findings and
> conclusions stated on the record or in an opinion or memorandum of
> decision.

Last year, the Supreme Court addressed this issue and laid out the appropriate procedure for

handling *Stern*-type claims.  "[W]hen a bankruptcy court is presented with such a claim, the proper

course is to issue proposed findings of fact and conclusions of law.  The district court will then review

the claim *de novo* and enter judgment."  *Executive Benefits*, 134 S. Ct. at 2170.

The question of whether or not bankruptcy courts have the constitutional authority to decide a

fraudulent transfer action is unsettled.[4]  In the instant case, the Court asked the parties to address the

---

[4] *Compare, e.g., Executive Benefit's Ins. Agency v. Ardison* (In re Bellingham Insurance. Agency, Inc.), 702 F.3d 553,
561 (9th Cir. 2012) *aff'd sub nom. Executive Benefits Ins. Agency v. Arkison*, 134 S. Ct. 2165, 189 L. Ed. 2d 83
(2014)("fraudulent conveyance claims, because they do not fall within the public rights exception, cannot be
adjudicated by non-Article III judges"), *and Stika Enterprises, Inc. v. Segarra-Miranda,* 2011 WL 7168645 (D.P.R.
2011) ("the fraudulent conveyance action brought by the trustee cannot be adjudicated by the Bankruptcy Court, a
non-Article III court, for lack of constitutional authority to do so"), *and Carr v. Loeser (In re International Auction
and Appraisal Services, LLC)*, 493 B.R. 460 (Bankr.M.D.Pa 2013) (bankruptcy court may not decide fraudulent
transfer action), *with In re Refco Inc.,* 461 B.R. 181, 187 (Bankr.S.D.N.Y.2011) ("Stern does not preclude the
bankruptcy court from issuing a final judgment on a fraudulent transfer claim. Unlike the state law tortious
interference claim in Stern, the Trustee's fraudulent transfer claim here 'flows from a federal statutory scheme,'
and is 'completely dependent upon adjudication of a claim created by federal law.'")(*citations omitted*), *and In re
Bujak*, 2011 WL 5326038, *2 (Bankr.D.Idaho 2011)("[T]he claims asserted by the Trustee are authorized by, and
arise under §§ 544(b) and 548 of the Bankruptcy Code.  Such claims 'may only be prosecuted by a bankruptcy
trustee on behalf of a bankruptcy estate, and because a trustee and a bankruptcy estate are strictly creatures of
the Bankruptcy Code, there would be no legal basis for this action were there no bankruptcy estate.'") (*citations
omitted*).

issue of whether the bankruptcy court has constitutional authority to enter final judgment in this case

and whether they consent to the Court's entry of final judgment.[5]   Bernardo, C&M, and the Trustee

unanimously responded that the Court lacks the authority to enter final judgment and that they do *not*

consent to the Court's entry of final judgment.   Given the unsettled state of the law on this issue and the

fact that even the Trustee, as the plaintiff seeking to avoid the alleged fraudulent conveyances, refuses

to consent to this Court's entry of final judgment, I decline to do so.   Instead, in accordance with the

procedure prescribed by the Supreme Court in *Executive Benefits*, the Court will submit proposed

findings of fact and conclusions of law to the district court for *de novo* review upon completion of this

adversary proceeding.   To the extent that it would dispose of some or all of the counts herein, the

present memorandum shall constitute part of that submission.

## VII.   Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute

as to any material fact and the movant is entitled to judgment as a matter of law."   Fed. R. Civ. P. 56(a),

made applicable by Fed. R. Bankr. P. 7056. "A 'genuine' issue is one supported by such evidence that a

reasonable jury, drawing favorable inferences, could resolve it in favor of the nonmoving party."

*Triangle Trading Co. v. Robroy Indus., Inc.*, 200 F.3d 1, 2 (1st Cir. 1999) (*internal citations omitted*).   A

"material" fact is one that has "the potential to change the outcome of the suit under the governing

law" if the dispute is resolved in favor of the nonmoving party.   *McCarthy v. Northwest Airlines, Inc.*, 56

F.3d 313, 314-15 (1st Cir. 1995).   In dealing with cross-motions for summary judgment, a court "must

consider each motion separately, drawing inferences against each movant in turn."   *Blackie v. State of*

---

[5] The question of whether a bankruptcy court can enter a final judgment on a Stern claim by litigant consent is an open question. *Wellness Int'l Network, Ltd. v. Sharif*, 727 F.3d 751 (7th Cir. 2013) *cert. granted in part*, 134 S. Ct. 2901, 189 L. Ed. 2d 854 (2014) (Certiorari granted on question of whether bankruptcy courts may exercise the judicial power of the United States by litigant consent, and if so, whether that consent be implied).

*Maine*, 75 F.3d 716, 721 (1st Cir. 1996).  "After giving notice and a reasonable time to respond, the Court

may . . . grant the motion on grounds not raised by a party[.]"  Fed. R. Civ. P. 56(f).

 Where the burden of proof at trial would fall on the party seeking summary judgment, that

party must support its motion with evidence—in the form of affidavits, admissions, depositions, answers

to interrogatories, and the like—as to each essential element of its cause of action.  The evidence must

be such as would permit the movant at trial to withstand a motion for directed verdict under Fed. R. Civ.

P. 50(a).  *Anderson v Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  Provided it does so, the burden then

shifts to the opposing party to adduce evidence that establishes a genuine issue of material fact as to at

least one essential element of the moving party's case.  The Court must view all evidence in the light

most favorable to the nonmoving party and indulge all inferences favorable to that party.  *Daury v.

Smith*, 842 F.2d 9, 11 (1st Cir. 1988).  The ultimate burden of proving the absence of a genuine issue of

material fact remains at all times on the moving party.

 Where the moving party would not bear the burden of proof at trial, the movant's initial burden

is simply to demonstrate or point out a lack of evidence to support at least one essential element of the

opposing party's case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986).  The burden then shifts to

the opposing party to adduce such evidence on each of the disputed elements as at trial would be

sufficient to withstand a motion for directed verdict.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 250.

**VIII.** **Discussion**

 The Trustee's complaint states five counts, but only three—Counts III, IV, and V—include

demands for relief against the defendants.  The three are based on 11 U.S.C. § 550(a), under which a

trustee who succeeds in avoiding a transfer under certain sections of the Bankruptcy Code, in this

instance 11 U.S.C. § 544, may recover from certain transferees of the property either the property

transferred or the value of the property.  11 U.S.C. § 550(a).  Accordingly, in order to prevail on Counts

III, IV, and V, the Trustee must first succeed in Count I or II in avoiding one or both of the transfers at

issue.  In each of Counts I and II, the Trustee seeks to avoid the same two transfers:  (i) the First

Ruthaford-to-Santosuosso Transfer, which arose out of the two-step manner in which attorney Bernardo

structured the sale of the Providence Property from Aurora to Ruthaford and Santosuosso, and (ii) the

Second Ruthaford-to-Santosuosso Transfer, effected by Ruthaford's delivery of the April 21, 2010

quitclaim deed to Santosuosso.[6]  The Trustee did not in his complaint name Holzinger as a defendant or

demand to avoid the subsequent transfer from Santosuosso to her.  Accordingly, the relief he seeks—

the only relief he may have on the complaint as it stands—is not the transferred real estate itself but the

value transferred in each transfer he succeeds in avoiding.

   a.  **Count I**

      i.  **Procedural Posture**

By Count I, the Trustee seeks under 11 U.S.C. § 544(b) and RIUFTA § 6-16-4(a)(2)[7] to avoid the

two Ruthaford-to-Santosuosso Transfers of the Providence Property as fraudulent.  In his cross-motions

for summary judgment, the Trustee moves for summary judgment on Count I with respect to the Second

Ruthaford-to-Santosuosso Transfer, and that transfer only.  In their motions for summary judgment,

neither C&M nor Bernardo takes issue with Count I.  Nor do they address Count I in their respective

responses to the Trustee's cross-motions.  Count I is thus before the Court only on the Trustee's cross

motions for summary judgment and only as to the Second Ruthaford-to-Santosuosso Transfer.

      ii.  **Applicable Law**

Count I of the complaint seeks avoidance of fraudulent transfers pursuant to 11 U.S.C. §544(b)

and RIUFTA § 6-16-4(a)(2).  In relevant part, 11 U.S.C. § 544(b) states that a trustee in bankruptcy "may

---

[6] At hearing, the Trustee also made arguments for avoiding the Holzinger sale, too, as a fraudulent transfer.
However, his complaint does not seek to avoid the Holzinger sale; Holzinger, a necessary party to any such count,
has not been named as a defendant in this proceeding; and the Trustee cannot introduce new counts for
consideration on a dispositive motion after the motion has been fully briefed.

[7] Count I refers to § 6-16-4 in general, and, at subsection 6-16-4(a)(1), that section sets forth an alternate basis for
finding a transfer to be fraudulent, specifically that "the debtor made the transfer . . . with actual intent to hinder,
delay, or defraud a creditor of the debtor"; but nowhere in the Count I or the complaint does the Trustee allege
that the debtor acted with actual intent to hinder, delay, or defraud.  The Trustee is proceeding under subsection
6-16-4(a)(2) alone.

avoid any transfer of an interest of the debtor in property [. . .] that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title[.]"  11 U.S.C. § 544(b)(1).  It permits a trustee to exercise avoidance rights that belong in the first instance to actual creditors under applicable law.  Applicable law in this instance is RIUFTA § 6-16-4(a).  In order to exercise this standing, the trustee must show that there exists an unsecured creditor that itself could bring the avoidance count that the trustee seeks to bring, a so-called "qualified unsecured creditor."  RIUFTA § 6-16-4 may be invoked both by creditors whose claims arose before the alleged transfer and those whose claims arose after.

In relevant part, § 6-16-4(a) provides:

(a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation: . . .

(2) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:

(i) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

(ii) Intended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his or her ability to pay as they became due.

This section gets a plaintiff only so far:  it establishes that certain transfers and obligations are fraudulent as to certain creditors.  For remedies as to transfers deemed fraudulent, one must turn to RIUFTA § 7.  In relevant part, it states:  "(a) In an action for relief against a transfer or obligation under this chapter, a creditor, subject to the limitations in § 6-16-8, may obtain:  (1) Avoidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim."  RIUFTA § 6-16-7(a)(1).

13

### iii.    Existence of Qualified Unsecured Creditor

The Court must first address the Trustee's authority under § 544(b)(1) to bring this claim.  As noted above, 11 U.S.C. § 544(b)(1) permits the trustee to exercise avoidance rights that belong in the first instance to actual creditors under applicable law.  The applicable law here is RIUFTA § 6-16-4, which defines a transfer as fraudulent as to "a creditor, whether the creditor's claim arose before or after the transfer was made[.]"  RIUFTA § 6-16-4(a).  All such creditors—those whose claims existed when the transfer was made, and those whose claims arose later—are eligible to seek redress under RIUFTA § 6-16-4.  The Trustee has demonstrated the existence of multiple qualified unsecured creditors:  FIA Card Services, AIG Federal Savings Bank, and the holders of Ruthaford's student debt.  As to each, it is unclear whether the creditor's claim arose before the transfer or after, but it is clear that each claim is in existence and falls into one or the other of these categories.  Accordingly, the Trustee may proceed under RIUFTA § 6-16-4(a).

### iv.    The Second Ruthaford-to-Santosuosso Transfer

The Second Ruthaford-to-Santosuosso Transfer is the transfer effected by the April 21, 2010 deed conveying Ruthaford's remaining one-half interest in the Providence Property to Santosuosso.  In order to establish that this transfer was fraudulent under RIUFTA § 6-16-4(a)(2), and therefore avoidable under RIUFTA § 6-16-7(a)(1), the Trustee as plaintiff bears the burden of proving (i) that the debtor made the transfer without receiving a reasonably equivalent value in exchange for it, RIUFTA § 6-16-4(a)(2), and (ii) that, when he made the transfer, the debtor intended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his or her ability to pay as they became due, RIUFTA 6-16-4(a)(2)(ii).[8]  Has the Trustee adduced such evidence as to each of these essential elements of his cause of action as would permit the movant at trial to withstand a motion for directed verdict?  And has he established that, as to each such element, his evidence is uncontroverted?

---

[8] The Trustee does not invoke the alternate basis in RIUFTA 6-16-4(a)(2)(i).

RIUFTA § 6-16-4(a)(2) requires first that the debtor receive less than reasonably equivalent value in exchange for the transfer in question.  On the evidence adduced, a finder of fact could reasonably conclude that the transfer was made for reasonably equivalent value.  The transfer was of a one-half interest in the Providence Property.  Santosuosso sold the property shortly after this transaction for $85,000, which would support, though not necessitate, a finding that the property had that same value when Ruthaford transferred his half interest to Santosuosso; in view of uncertainty about whether a sale would occur and at what price, a finder of fact could also find that the value was less than $85,000.  The transferred half interest would thus have had a gross value of as much as $42,500 but perhaps less-- $37,500 would be within the range of reason.  It is undisputed that Santosuosso did not pay Ruthaford in cash for delivery of the deed, but a finder of fact could reasonably infer from the adduced evidence that this transfer was made by Ruthaford in anticipation of a sale to a third party and in further anticipation that, from the proceeds of this sale, Santosuosso would satisfy debts for which Ruthaford was personally liable:  the Casa del Denaro mortgage in the amount of $30,970.80, municipal charges against the property in the amount of $7,521.90, and possible liability to Bernardo in the amount of $21,609.12 plus interest and related costs and fees.  Under the RIUFTA, value is given for a transfer if, in exchange for the transfer, an antecedent debt is satisfied.  RIUFTA § 6-16-3(a).  It is also undisputed that the Providence Property was encumbered at the time of the transfer and of the subsequent sale by the Casa del Denaro mortgage in the amount of $30,970.80 and by municipal charges against the property in the further amount of $7,521.90, and that these were fully satisfied from the proceeds of the sale to Holzinger.  It is uncontroverted that Ruthaford was personally obligated on the mortgage loan.  There is evidence from which one could find that, as owner of the Providence Property for a time, Ruthaford was also personally liable for the municipal encumbrances.

On these facts, at the time of the transfer, the owners' equity in the Providence Property at the time of transfer was its value, $85,000, less its encumbrances, $30,970.80 and $7,521.90:  equity of

$46,507.30.  Ruthaford had and transferred a half interest in the property, or value of $23,253.65.  For

this, a finder of fact could find, he received value in the form of payment of personal liabilities of

$30,970.80 for the mortgage, $7,521.90 for the municipal obligations, and $25,339.54 to Bernardo, or a

total of $63,832.24, which is more than reasonably equivalent to the value transferred.  If half of the

liabilities are apportioned to Santosuosso as a co-obligor instead of to Ruthaford—notwithstanding that

Ruthaford could be found to have been liable for the obligations in full, albeit jointly with Santosuosso—

then Ruthaford could be deemed to have received compensation in the amount of half of the satisfied

liabilities, or $31,916.12, which also is more than reasonably equivalent value.  In short, on the record

adduced in conjunction with the present motions, a finder of fact could find for the defendants on the

issue of reasonably equivalent value, and summary judgment must therefore be denied on Count I.[9]

### b. Count II

#### i. Procedural Posture

Count II seeks avoidance of the First and Second Ruthaford-to-Santosuosso Transfers as

fraudulent transfers pursuant to 11 U.S.C. § 544(b) and RIUFTA § 6-16-5.  The defendants' motions for

summary judgment take no issue with Count II.  In his cross motions for summary judgment, the Trustee

seeks summary judgment on Count II, but only with respect to the Second Ruthaford-to-Santosuosso

Transfer.

#### ii. Applicable Law

Count II of the complaint seeks avoidance of fraudulent transfers pursuant to 11 U.S.C. §544(b)

and RIUFTA § 6-16-5(a).  As noted above, 11 U.S.C. § 544(b)(1) permits the trustee to exercise avoidance

rights that belong in the first instance to "qualified unsecured creditor" under actual law, an unsecured

creditor that itself could bring the avoidance count that the trustee seeks to bring.  An avoidance action

---

[9] I therefore need not address whether the further requirement in RIUFTA § 6-16-4(a)(2)(ii).  The evidence as to
this element is limited.

under RIUFTA § 6-16-5(a) can be brought only by a creditor "whose claim arose before the transfer was

made."  It states:

> (a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor
> whose claim arose before the transfer was made or the obligation was incurred if the
> debtor made the transfer or incurred the obligation without receiving a reasonably
> equivalent value in exchange for the transfer or obligation and the debtor was insolvent
> at that time or the debtor became insolvent as a result of the transfer or obligation.

RIUFTA § 6-16-5(a).  The Trustee must therefore prove (i) that there exists a creditor of the

estate whose claim was in existence at the time the transfer was made, (ii) that Ruthaford

received less than reasonably equivalent value for the transfer, and (iii) that Ruthaford was

insolvent at that time of the transfer or became insolvent as a result of it.

### iii.    Existence of Qualified Unsecured Creditor

The Trustee has not demonstrated, on the instant record, the existence of a creditor whose

claim arose before these alleged transfers.  He has shown only that there exist three creditors whose

claims *may* have arisen before the transfer in question.  No evidence has been offered as to the

origination of Ruthaford's student loan debt, his debt to FIA Card Services, or his debt to AIG Federal

Savings Bank.[10]  A finder of fact could reasonably find that the Trustee has not established that any one

of these debts existed at the time of the alleged transfers.  This genuine issue of material fact requires

denial of summary judgment on Count II as to the Second Ruthaford-to-Santosuosso Transfer.

### iv.    Reasonably Equivalent Value

Under RIUFTA § 6-16-5(a), the Trustee must further establish that Ruthaford received less than

reasonably equivalent value for the transfer.  The reasonably equivalent value requirement is common

to actions under RIUFTA § 6-16-4 and § 6-16-5(a).  I determined above, on the Trustee's count under §

6-16-4 as to this same transfer, that there exists a genuine issue of material fact as to Ruthaford's

---

[10] While the Trustee notes in his Statement of Undisputed Facts that Ruthaford's savings account with AIG Federal
Savings Bank dates back to 2004, it is unclear, on the current record, when AIG Federal Savings Bank became an
unsecured creditor of Ruthaford.

receipt of reasonably equivalent value for the transfer. That determination applies with equal force here and constitutes a second basis for denying the Trustee's motion for summary judgment as to Count II.

    **c.   Count III**

In Count III, the Trustee seeks under 11 U.S.C. § 550(a) to recover from Santosuosso as initial transferee the value of the property transferred in the First and Second Ruthaford-to-Santosuosso Transfers, to the extent that he succeeds in avoiding these transfers in Counts I and II. This count is before the Court only on the Trustee's motion for default judgment against Santosuosso.

The liability of Santosuosso as initial transferee under § 550 is contingent upon the Trustee's ability to avoid one of the alleged fraudulent transfers under § 544. The Court has denied the Trustee's motions for summary judgment as to the two counts in which the Trustee seeks to exercise his avoidance powers under § 544(b) as to the Second Ruthaford-to-Santosuosso Transfer. The Trustee has not even moved for summary judgment as to the First Ruthaford-to-Santosuosso Transfer, and, on such evidence as I have before me now, it is difficult to view that event as truly a transfer at all.[11]  It is not clear at this juncture that the Trustee can succeed in avoiding either of the two transfers at issue—and therefore whether he is entitled to relief even against Santosuosso, his default notwithstanding. For the sake of fairness and consistency, the Court remains inclined to hold this motion for further proceedings to determine whether, in light of the uncontroverted evidence set forth in conjunction with the motions for summary judgment, the Trustee states a valid claim for relief against Santosuosso at all.

---

[11] The conveyance in question occurred as part of a unified transaction in which Ruthaford and Santosuosso acquired the property in equal parts from a common seller. For convenience only, Bernardo structured the transaction to involve first a deed from the seller to Ruthaford and then a second deed from Ruthaford to himself and Santosuosso, but Ruthaford never owned the property alone for any appreciable time and was not intended to by any of the parties involved.

### d. Counts IV and V

#### i. Procedural Posture

In Counts IV and V, the Trustee seeks under 11 U.S.C. § 550(a)(2) to recover from C&M and Bernardo respectively as mediate or immediate transferees of the property transferred in the First and Second Ruthaford-to-Santosuosso Transfers, to the extent that he succeeds in avoiding these transfers in Counts I and II. C&M has moved for summary judgment on Count IV, and Bernardo has moved for summary judgment as to Count V. The Trustee has not moved for summary judgment as to either count. In addition, the Court has ordered the Trustee to show cause why summary judgment should not enter for the defendants on Counts IV and V because, on the uncontroverted facts, these defendants were not transferees of the property that is the subject of the fraudulent transfer counts.

#### ii. Applicable Law

To the extent a transfer is avoided under § 544, 11 U.S.C. § 550(a) allows a trustee to "recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from [. . .] any immediate or mediate transferee of such initial transferee." As an affirmative defense to a recovery under § 550(a), § 550(b) prohibits the trustee from recovering from (1) "a transferee that takes for value, including satisfaction or securing of a present or antecedent debt, in good faith, and without knowledge of the voidability of the transfer avoided" or (2) "any immediate or mediate good faith transferee of such transferee." 11 U.S.C. § 550(b). "Knowledge" as used in § 550(b)(1) is not defined in the Bankruptcy Code. A transferee has knowledge if he "knew facts that would lead a reasonable person to believe that the property transferred was recoverable." *Brown v. Third Nat'l Bank* (*In re Sherman*), 67 F.3d 1348 (8th Cir. 1995)(*citations omitted*).

#### iii. Motions for Summary Judgment

C&M and Bernardo advance between them four arguments for summary judgment. First, both argue that the Trustee cannot prevail because the funds paid to each of them were or should be

deemed subject to a constructive trust in Bernardo's favor, meaning that the equitable interest in the proceeds has always been Bernardo's and could never have been Ruthaford's; but, they argue, 11 U.S.C. § 541(d) excludes from the bankruptcy estate any property in which the debtor had only legal title but not an equitable interest, and therefore the proceeds in question cannot become property of the estate. This argument is unavailing because, by its express terms, § 541(d) applies only to property that becomes property of the estate through 11 U.S.C. § 541(a)(1) and (2). 11 U.S.C. § 541(d) ("Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest . . . becomes property of the estate *under subsection (a)(1) or (2) of this section* only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that debtor does not hold.") Property that the Trustee recovers under 11 U.S.C. § 550 becomes property of the estate through 11 U.S.C. § 541(a)(3) (the estate includes "any interest in property that the trustee recovers under section . . . 550").

Second, Bernardo and C&M both also argue that the payments to them of the proceeds of the Santosuosso to Holzinger sale were not fraudulent under the RIUFTA, but this argument is moot. The Trustee does not contend that the payments of the proceeds to Bernardo or C&M were themselves fraudulent transfers, only that these payments can somehow be recovered because they constitute subsequent transfers of the property transferred in the First and Second Ruthaford-to-Santosuosso Transfers.

Third, C&M argues that it was not a transferee under the RIUFTA. This argument too is moot: the Trustee does not contend that C&M was a transferee under the RIUFTA. The Trustee is proceeding against C&M under 11 U.S.C. § 550(a). In order to do so, he must establish that *Santosuosso* was the recipient of a fraudulent transfer under RIUFTA, but not that C&M was a transferee within the meaning of that law.

Fourth, Bernardo argues that on the undisputed facts, he qualifies for the § 550(b) defense as a transferee who took for value, in good faith, and without knowledge of the voidability of the alleged fraudulent transfer.  Bernardo is not entitled to summary judgment on his § 550(b) defense because there are genuine issues of material fact as to whether he took the funds in good faith and had knowledge of the voidability of the alleged fraudulent transfer.  Bernardo certainly knew about the Second-Ruthaford-to-Santosuosso Transfer; it is undisputed that Bernardo was aware that Santosuosso had obtained a deed from Ruthaford sometime prior to the Holzinger Sale.  What remains unclear on the current record is how much Bernardo knew about this transfer.  Making inferences in favor of the non-moving Trustee, a finder of fact could reasonably infer that Bernardo had knowledge that the second transfer was voidable, and consequently that he is not entitled to the 550(b) defense.  Accordingly, Bernardo is not entitled to summary judgment on the basis of a § 550(b) defense.

For the above reasons, the defendants' motions for summary judgment as to Counts IV and V must be denied.

### iv.    Order to Show Cause

After briefing was complete on the motions and cross-motions for summary judgment, the Court ordered the Trustee to show cause why summary judgment should not be entered for C&M and Bernardo on Counts IV and V.  As the basis for this order, the Court observed that 11 U.S.C. § 550(a), on which the Trustee relies in both counts, states that to the extent that a transfer is avoided under 11 U.S.C. § 544, the trustee "may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property"; but it appeared from the motions for summary judgment and the Trustee's responses to them that it is uncontroverted that neither C&M nor Bernardo was a transferee of the real property whose transfer is the subject of avoidance counts, Counts I and II,  *i.e.* the Providence Property.

The Trustee filed a written response to the Order to Show Cause and addressed the Court's

Order at the hearing.  He does not dispute that C&M and Bernardo are *not* transferees of the Providence

Property.  He argues that he is nonetheless entitled to relief against them under § 550(a) on the basis of

the following reasoning:

> (1) If the Trustee avoids the Second Transfer Deed, the interest transferred by that deed to Santosuosso is automatically preserved for the estate's benefit by 11 U.S.C. § 551.

> (2) By virtue of being preserved for the estate, the transferred interest would become property of the estate by operation of 11 U.S.C. § 541(a)(4).

> (3) Santosuosso's sale of the transferred interest to Holzinger produced proceeds.

> (4) The proceeds of property of the estate are themselves property of the estate.  11 U.S.C. § 541(a)(6).

> (5) C&M received proceeds from Santosuosso's sale to Holzinger, which proceeds are in whole or in part estate property.  Pursuant to 11 U.S.C. § 550(a)(2), the Trustee may recover those  proceeds paid to C&M that constitute estate property.

> (6) C&M transferred to Bernardo some of the proceeds it received from Santosuosso's sale to Holzinger.  The proceeds transferred to Bernardo include estate property.  Pursuant to 11 U.S.C. § 550(a)(2), the Trustee may recover those  proceeds paid to Bernardo that constitute estate property.

This reasoning assumes that § 550(a) is a vehicle for recovery of property of the estate, but

nothing in § 550(a) turns on whether the property at issue is property of the estate.  Section 550(a) gives

a trustee power to recover only "the property transferred, or, if the court so orders, the value of such

property."  11 U.S.C. § 550(a).  "The property transferred" is the property that is the subject of a transfer

that the trustee succeeds in avoiding.  Section 550(a) does not extend the right of recovery to the

proceeds of the property transferred.  Where the drafters of the Bankruptcy Code meant to include

proceeds, they were clear about it.  See 11 U.S.C. §§ 541(a)(6) (property of the estate includes proceeds

of property of the estate) and 552(b)(1) (extending certain prepetition security interests to postpetition

proceeds).  I conclude (i) that the right of recovery in § 550(a) is limited to "the property transferred" or

that property's value and (ii) that § 550(a) permits a trustee to recover that property, or its value, only from transferees of that property.  It being uncontroverted that C&M and Bernardo are not transferees of the Providence Property, which is the only property whose transfer the Trustee has sought to avoid, C&M and Bernardo are entitled to judgment as a matter of law on Counts IV and V.

In conjunction with their motions for summary judgment, C&M and Bernardo have moved for entry of separate and final judgment as to them under Fed. R. Civ. P. 54(b).  They have offered no justification for entering judgment at this juncture, before Count III against Santosuosso is resolved, and I see none.  Accordingly, relief under Rule 54(b) will be denied.

## ORDER

For the reasons set forth above, the motions of C&M and Bernardo for summary judgment are denied, but, on the basis of the Court's Order to Show Cause, summary judgment is granted for these defendants on Counts IV and V.   The Trustee's cross-motions for summary judgment are denied.  The Court will schedule a further hearing on the Motion for Default Judgment against Santosuosso.   The requests of C&M and Bernardo for entry of separate and final judgment, pursuant to Fed. R. Civ. P. 54(b), are denied.  At the close of the adversary proceeding, the Court will submit this memorandum of decision, especially the dispositive rulings therein, as proposed findings of fact and conclusions of law to the district court for de novo review upon completion of this adversary proceeding

Date:  March 30, 2015

_____
Frank J. Bailey
United States Bankruptcy Judge